CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
3/21/19
JULIA C. DUDLEY, CLERK
BY:   s/ K. DOTSON
DEPUTY CLERK

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**
LEWIS F. POWELL, JR. UNITED STATES COURTHOUSE ANNEX
1100 EAST MAIN STREET, SUITE 501
RICHMOND, VIRGINIA 23219-3517
WWW.CA4.USCOURTS.GOV

PATRICIA S. CONNOR
CLERK

TELEPHONE
(804) 916-2700

March 22, 2019

Julia C. Dudley, Clerk
U.S. District Court
Western District of Virginia
116 North Main Street, Room 314
Harrisonburg, VA 22802

      Re:    *USA v. Evans*
               *5:15-cr-00020-MFU-1*

Dear Ms. Dudley:

      The enclosed document was received by this court on March 21, 2019, and is construed as a notice of appeal.

      In accordance with Rule 4(d) of the Federal Rules of Appellate Procedure, the document has been date stamped and is being forwarded to your court for appropriate disposition. See FRAP 4(d) ("If a notice of appeal in either a civil or a criminal case is mistakenly filed in the court of appeals, the clerk of that court must note on the notice the date when it was received and send it to the district clerk. The notice is then considered filed in the district court on the date so noted.")

      If the district court has already transmitted a notice of appeal to this court as to the issues contained in the attached, it is unnecessary to transmit notice of the appeal a second time.

                         Yours truly,

                         *Patricia S. Connor*
                         Patricia S. Connor

PSC:dlg
Enclosures

    cc:    Warren Evans, Jr. (w/ stamped 1st page)
           #58902-037
           U.S. Penitentiary – Coleman I
           P.O. Box 1033
           Coleman, FL 33521

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

WARREN EVANS, Jr.,
    Movant,

v.                                                  Case No. 5:15-cr-00020-MFU-1

UNITED STATES OF AMERICA,
    Respondent,

---

MOTION REQUESTING TO FILE BELATED DIRECT APPEAL BECAUSE
OF PETITIONERS ATTORNEY FAILURE TO DO SO AFTER PETITIONER
REQUESTED HIM/HER TO DO SO WHICH IS A <u>ROE v. FLORES-ORTEGA</u>,
528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)
VIOLATION OF PETITIONERS RIGHTS.

---

COMES NOW, the Petitioner, Warren Evans, Jr., (hereinafter) referred to as the defendant, pro-se, in the above styled and captioned cause and respectfully submit this Motion Requesting To File A Belated Direct Appeal Because of petitioners Attorney Failure To Do So after Petitioner Requested Him/Her To Do So which is a <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) violation of petitioners Rights.

### JURISDICTION

This Honorable Court is vested with the jurisdiction and the discretionary authority to address and grant the requested relief sought.

### PRELIMINARY STATEMENT OF FACTS & PROCEDURAL HISTORY

Movant's conviction arises from an incident that occurred on March 20, 2014. On the day of July 6, 2015, a arrest warrant was issued for movant for; Count (1) 21:846=CD.F Conspiracy to Distribute controlled Substance-21:846, 841(b)(1)(A) and 841(b)(1)(C)-heroin, cocaine base "crack" (10/2014), Count (2) 21:846=CD.F- Conspiracy to Distribute

Controlled Substance-heroin death-21:846 and 841(b)(1)(C) (10/2014), and the Complaints: 21:846=CD.F- Conspiracy To Distribute A Controlled Substance-21:846, 841(1)(1) & (b)(1)(C)-HEROIN (10/17/2014). On June 24, 2015, Movant was Arrested, and charged with the above stated charges in which one was the Death of one of his drugs sales.

Petitioner brings to this Honorable Court a violation of his Constitutional Rights because his then Attorney; R. Darren Bostic, Esq. failure to file a Direct Appeal after he was requested to do so by petitioner.

It is clearly stated in Montemoino v. United States, 68 F.3d 416 (11th Cir. 1995) stating; (failure to file Notice of Appeal after requested by defendant), also Martin v. United States, 81 F.3d 1083 (11th Cir. 1996) stating; (counsel failed to file a Notice of Appeal when requested to do so by the defendant). By petitioners Attorneys failure to file a timely appeal violates petitioners due process right to the court because his actions alone cause petitioner case to end where his Attorney left him at.

Although petitioners Attorney withdrew after the case ended caused the due process violation. Due Process does require that a pro-se defendant have access to legal resources. See Bounds v. Smith, 430 U.S. 817, 828 (1977) ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries of adequate assistance from persons trained in the law."); see United States v. Kind, 194 F.3d 900, 905 (8th Cir. 1999)(defendant has due process right of access to legal resources). Beacuse of petitioners counsels failure to file his Notice of Appeal, and also knowing that petitioner was leaving to go to Federal prison to start his Federal prison sentence.

Petitioner continued to argue with his Attorney; R. Darren Bostic, Esq. concerning the Autopsy Report, and why was it taking so long for the report to come back.

After receiving the requested records from my Attorney; R. Darren Bostic, Esq., we spoke about the contents of the report, and this was in the month of August 2017.

In the month of August, 2017, I received a letter from my Attorney R. Darren Bostic, in response to the letter I had wrote to him concerning a copy of the Autopsy report, and after reading over the letter that's when I notice that it was a mixture of drugs that took the life of the victim in this case.

When petitioner contacted his Attorney R. Darren Bostic petitioner ask within his letter if his Attorney was aware of Burrage v. United States, 134 S.Ct. 881, 187 L.Ed. 2d 715 (2014), in which petitioner ask him why didn't he use this case to argue his case?

Petitioner also ask his Attorney if he was aware of Tiofila Santillana v. Jody Upton, 846 F.3d 779; 2017 U.S. App. LEXIS 747. See Exhibit (A) of this Motion which is the response letter from my Attorney which mention that it was a second Autopsy report that I had no knowledge of until I receive this letter. This letter was sent August 13, 2017.

Also I would like for you to review the second letter, and reports that my Attorney sent to me June 17, 2018, in which it contain copies of the autopsy report, and it proves that my Attorney didn't inform me of this until this time, see Exhibit (B).

Because of petitioners counsels failure to file his Notice of Appeal, and also knowing that petitioner was going to Federal prison left petitioner with [No] Federal resources.

The actions of petitioners Attorney is clearly a Roe v. Flores-Ortega, 528 U.S. 470, 483-84 (2000) (prejudice presumed where defendant demonstrates reasonable probability that but for Counsel's deficient failure to consult defendant about an appeal, counsel would have timely appealed) also Smith v. Robbins, 528 U.S. 259, 287 (2000) (3 categories of cases in which prejudice is presumed: (1) denial of counsel; (2) where counsel is burdened by an actual conflict of interest; and (3) various kinds of State interference).

In another very important Supreme Court case; United States v. Cronic, 466 U.S. 648, 659 (1984) (prejudice presumed where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.").

3
Case 5:15-cr-00020-MFU   Document 66   Filed 03/21/19   Page 4 of 17   Pageid#: 639

It's clearly shows that petitioners counsel fail to file a Notice of Appeal as he was requested to do, and now the petitioner is now requesting this Honorable Court to allow him to file a Belated Notice of Appeal. A lawyer disregards a defendant's specific instructions to file an appeal acts in a manner that is professionally unreasonable, satisfying the first prong of the Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) test citing out of Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). In Campusano v. United States, 442 F.3d 770 (2006) (holding that "where counsel does not file a requested Notice of Appeal and fails to file an adequate Anders brief [arguing that an appeal would be frivolous], courts may not dismiss the hypothetical appeal as frivolous on collateral review.").

The Supreme Court established a three-step analytical framework to be applied assessing ineffective assistance of counsel claims predicated upon counsel's failure to file a notice of appeal on the defendant's behalf. Under Flores-Ortega, courts first must establish whether a defendant requested that his attorney file a notice of appeal.

If such a request were made and disregarded, then counsel acted in a manner that was per se professionally unreasonable.

If, however, the defendant neither instructs counsel to file an appeal nor asks that anappeal not be taken, courts must then determine whether counsel "consulted" with the defendant about an appeal.

In this context, the term "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."

If counsel has consulted with the defendant..."then counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."

4

If however, counsel fails to consult with the defendant, then "the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." In this final category of cases, the Court "reject[ed] a bright-line rule that counsel must always consult with the defendant regarding an appeal." Rather, the Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." See Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). Well, petitioner thought that he was doing right by requesting his Attorney to file an Appeal on his behalf, and that his Attorney would follow his request to appeal.

The Supreme Court has rejected attempts to explain this "actual or constructive assistance of counsel" category to presume prejudice where (1) counsel failed to file notice of appeal without defendant's consent, Flores-Ortega, 528 U.S. at 484, and (2) counsel neglected to file a merits brief for appeal, Robbins, 528 U.S. at 288-89.

In both instances, the Court has required satisfaction of both the performance and prejudice prongs to sustain an ineffective assistance claim. See Flores-Ortega, 528 U.S. at 484; Robbins, 528 U.S. at 288-89.

## PRESENTENCE REPORT RELIEF

See United States v. Daniels, 821 F.2d 76, 80 (1st Cir. 1987) and United States v. Blackner, 721 F.2d 703, 708 (10th Cir. 1983).

There cannot be an entry of a plea with specificity without a complete understanding of the impact of the (PSI Report) and its content, in sentencing Presentence Report and Presentence Investigation can not be use as evidence, specific finding in the (PSI-PSR)

5

are use only for the background history of a convicted felon. In petitioners case here, he made a plea in court, but not knowing that there was two (2) different autopsy reports in which it clearly shows that the victim had more then one drug within her body.

Petitioner ask his Attorney about two (2) very important cases in which explain the correct way of dealing with a problem such as this; see <u>Burrage v. United States</u>, 134 S.Ct. 881, 187 L.Ed.2d 715 (2014) and <u>Tiofila Santillana v. Jody Upton</u>, 846 F.3d 779; 2017 U.S. App. LEXIS 747.

This information should have been file within this Honorable Court for review before given to the Probation Officer after the court made a ruling concerning this issue.

Petitioner would like to cite this last United States Supreme Court case which hopefully will cover all of the mistakes that may be within this motion. See <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972);

> pro-se litigants are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers; if the court can reasonably read pleadings to state a valid claim on which litigant could prevail it should do so despite failure to cite proper legal authority, confusion of legal theories, poor theories, poor syntax, and sentence construction, or litigant's unfamiliarity with (legal) pleading requirements; <u>Hughes v. Rowe</u>, 449 U.S. 5 (1980); <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).

## CONCLUSION

Because of the violations that was done to petitioner concerning his Attorneys failure to file a Notice of Appeal, petitioner Prays that this Honorable Court will grant his request, and give him the opportunity to be heard in the United States Court of Appeals For The Fourth Circuit.

/s/ Warren Evans Jr.
Warren Evans Jr. #58902-037 Pro-Se
Federal Correctional Complex-USP 1
P.O. Box 1033
Coleman, Florida 33521

3/15/19
Date

## CERTIFICATE OF SERVICE

I, Warren Evans Jr., pro-se, do hereby certify under the penalty of perjury (28 USC § 1746) that I have served a true and correct copy of the following document(s): <u>MOTION REQUESTING TO FILE A BELATED DIRECT APPEAL BECAUSE OF PETITIONERS ATTORNEY FAILURE TO DO SO AFTER PETITIONER REQUESTED HIM TO DO SO WHICH IS A ROE v. FLORES-ORTEGA, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) VIOLATION OF PETITIONERS RIGHTS.</u>

Which, pursuant to <u>Houston v. Lack</u>, 487 U.S. 266, 101 L.Ed.2d 245, 108 S.Ct. 2379 (1988), deemed filed at the time it was delivered to prison authorities for forwarding to the court and service upon parties to litigation and/or their attorney(s) of record.

I have placed the material referenced above in a properly sealed envelope with first-class postage (stamps) affixed and address it to:

1. United States Court of Appeals
   For The Fourth Circuit
   Clerk of The Courts
   Lewis F. Powell
   1100 East Main St. Suite 501
   Richmond, VA 23219

2. United States District Court
   Office of The Clerk
   116 N. Main Street, Room 314
   Harrisonburg, VA 22802

3. United States Attorney's Office
   Elizabeth Wright
   116 N. Main St. Room 130
   Harrisonburg, VA 22802

Petitioner is filing three (3) copies of said motion within the Clerk's Office of the Court of Appeals, and petitioner is also forwarding one (1) copy of said motion to the United States Attorney's Office to: Elizabeth Wright, and one (1) copy of said motion to the District Courts Clerk. Petitioner place said document(s) in the United States Postal Service via the legal mailbox here at the United States Peniteniary, USP 1, Coleman, Florida.

By: *Warren Evans Jr*
Mr. Warren Evans Jr. #58902-037 Pro-Se

3/15/19
Date



Exhibit #1

R. Darren Bostic, Esq.
Attorney at Law

Megan Fauls
Legal Assistant

**THE BOSTIC LAW FIRM**
MAKE THE LAW WORK FOR YOU

540-432-1119
540-432-0636
409 Virginia Avenue
Harrisonburg, VA 22802

August 13, 2017

Warren Evans, Jr.
Fed. Reg. No.: 58902-037
U.S. Penitentiary Canaan
P.O. Box 300
Waymart, PA 18472

RE: Response to Letter

Dear Mr. Evans:

In response to your letter, I will gladly comply with getting the discovery to you. As you recall, the discovery is quite extensive, however, I will get the relevant aspects of it to you. Some of the items in the discovery are not allowed to be sent to a prison so I need to determine what the prison will allow. I know, on prior occasions, when I sent discovery to clients, the prison returned the discovery with instructions that particular parts of the discovery were not allowed to be sent to an inmate.

As to a couple of specific things you asked about. I will get the autopsy reports to you. You may not recall, but we went over the autopsy reports and on each of the fatalities and those that almost died. Each of the reports did state that the amount of heroin in the person was a lethal dose. I was aware of *Burrage v. United States* and examined each of the fatalities to determine if the government could prove you and Chris Giles were the distributors of the heroin in those cases.

Irrespective of *Burrage*, the biggest concern I had in your case was your prior criminal record. You had a number of prior criminal felony drug convictions which opened you up to a mandatory life sentence. Any 2 of the prior felony drug convictions would qualify and you actually had at least 3. Those were Criminal Court of Baltimore for each of the 3 convictions. Each conviction was for Possession with the Intent to Distribute and the dates of conviction were 5/26/05, 4/20/2007, and 2/10/2014. You also had several possession of a controlled substance convictions, although 1 of those could not be used since it was a misdemeanor

Although I have never actually seen it happen, if you succeeded on a Habeas action, that could potentially open up the case again and subject you to the mandatory life sentence. I do want to advise you of that fact.

In any event, I'll get the discovery out to you this week. Good luck and I'll be happy to cooperate and assist in any way I can.

Sincerely,

R. Darren Bostic, Esq.

Jerry,
I'm also enclosing the Cert of Character I drafted. It was information...

R. Darren Bostic, Esq.
Attorney at Law

Megan Fauls
Legal Assistant



**THE BOSTIC LAW FIRM**
MAKE THE LAW WORK FOR YOU

540-432-1119
540-432-0636
409 Virginia Avenue
Harrisonburg, VA 22802

June 17, 2018

Warren Evans, Jr.
Register Number 58902-037
United States Penitentiary
P.O. Box 300
Waymart, PA 18472

RE: Response to Letter

Dear Mr. Evans:

    I apologize for not getting this report to you sooner as I had closed the file out and had to get it out of storage and go through it to find exactly what you were looking for. I have checked the original Discovery Order to insure that nothing prevented me from forwarding this to you. There is a Standing Order from the Federal District Court that precludes me from providing a Presentence Report and I was hesitant to forward any documentation that could put me in violation of a court order.

    Please find enclosed the Autopsy Report done by Dr. Jocelyn Posthumus for Rita Faye Livermore. I have highlighted the section that I believe is most important to you. On the 3rd sheet of the autopsy report, under "Case Summary" is where in the report it lists the level of morphine (heroin) in her body that was sufficient to cause death. It also lists the actual "Cause of Death" immediately below that.

    The report lists the amount of morphine found in Ms. Livermore's body when the autopsy was performed and shows the heroin she consumed as being a "lethal level of morphine".

    If there is anything else you need, let me know.

Sincerely,

R. Darren Bostic, Esq.
The Bostic Law Firm

DEPARTMENT OF HEALTH
OFFICE OF THE CHIEF MEDICAL EXAMINER
10850 PYRAMID PLACE - SUITE #121
MANASSAS, VIRGINIA 20110


RECEIVED JUN 18 2014
OFFICE OF THE CHIEF MEDICAL EXAMINER NORTHERN REGION

AUTOPSY # N194-14
DATE 03/20/2014, Thursday
TIME 1240 hours

REPORT OF AUTOPSY
Page #1

DECEDENT: RITA FAYE LIVERMORE
AUTOPSY AUTHORIZED BY: Dr. Jocelyn Posthumus – Frederick County
BODY IDENTIFIED BY: Body bag and toe tags
PERSONS PRESENT AT AUTOPSY: Jocelyn Posthumus, M.D./ A. Tshiwala (Autopsy Technician) W. Pifer (Frederick Cuonty SD)

Rigor: absent  Livor: purple  Distribution: posterior, blanching  Age: 49  Race: W  Sex: F  Length: 62"  Weight: 152 lb  Eyes: hazel  Hair: black (dyed brown)  Body heat: warm

CLOTHING: The decedent is received clad in a shirt, jeans, underwear and boxers.
PERSONAL EFFECTS: Two earrings.
EXTERNAL EXAMINATION: The body is that of a well-developed Caucasian female with an overall appearance consistent with the reported age of forty-nine years. There are no peculiar odors or color changes. The scalp and soft tissues of the head are uninjured. The facial bones are palpably intact. The sclerae and conjunctivae are clear and without petechiae. Dentition is natural and in good condition. The neck is symmetrical with a range of mobility within normal limits. The chest and back are normally formed. The abdomen is globoid with striae. The upper and lower extremities are symmetrical and well-developed. The hands are received unbagged and are free of blood. The fingernails and hands are free of injury.
DECOMPOSITION: None.
AUTOPSY PROCEDURE: The body is opened in the usual thoraco-abdominal and biparietal intermastoid incisions. The neck block is excised after passive drainage of the head and torso.
EVIDENCE OF INJURY (External and Internal): 3 needle punctures with underlying subcutaneous hemorrhage over the right forearm. Contused abrasions over the lower lip.
MEDICAL INTERVENTION: 2 defibrillator pads and 4 EKG tabs.
TATTOOS: Design of a rose over the right lateral shoulder and "JT" over the right distal forearm.
SCARS: Cluster of linear scars over the left ventral forearm and a faint linear scar over the right lateral ankle.
HISTORY: Found unresponsive with drug paraphernalia.

PATHOLOGICAL DIAGNOSES:
Postmortem toxicology:
  Iliac blood positive for cocaine (0.062 mg/L), benzoylecgonine (1.4 mg/L), morphine (0.23 mg/L) and codeine (0.014 mg/L)
  Vitreous humor positive for cocaine (0.012 mg/L), morphine (0.058 mg/L), codeine (0.012 mg/L) and
  6-acetylmorphine (present)
Needle punctures (3)
Pulmonary edema
Moderate coronary artery atherosclerosis, focal 50% occlusion of the left diagonal
Periaortic hematoma consistent with cardiopulmonary resuscitation
Hysterectomy and cholecystectomy, remote
Contused abrasions, lower lip

FOR PROFESSIONAL USE ONLY
[illegible stamp]

Cause of death: Acute combined heroin and cocaine poisoning        Final Report: X

The facts stated herein are true and correct to the best of my knowledge and belief.

06/18/2014                NO VA ME OFFICE
Date Signed               Place of Autopsy          Signature of Pathologist
                                                    JOCELYN POSTHUMUS, M.D.

A Copy Testo
JUN 2 0 2014
Assistant Chief Medical Examiner

## INTERNAL EXAMINATION (Exclusive of Injury):

**SEROUS CAVITIES:** The organs are in their usual positions. The pleural, pericardial and peritoneal cavities are without significant fluid accumulation or adhesions.

**HEART:** 320 gm with a normal size and shape. The coronary arteries arise normally and follow their usual courses. There is focal approximately 50% occlusion of the proximal left diagonal coronary artery and minimal approximately 20%-30% occlusion of the proximal left anterior descending coronary artery by eccentric atheromatous plaques. The valves are unremarkable. The myocardium is red-brown and firm with no evidence of hemorrhage or fibrosis. The left ventricular free wall measures 17 mm, the right ventricular free wall 5 mm, and the interventricular septum measures 12 mm. The atrial and ventricular septa are intact. The vena cava and pulmonary arteries are free of antemortem thrombus.

**AORTA:** The aorta is free of atherosclerosis. Mild hematoma formation around the aortic arch.

**NECK ORGANS:** The strap muscles are free of hemorrhage or other evidence of soft tissue injury. The laryngeal cartilages, hyoid bone, and cervical spine are intact. The thyroid shows unremarkable tan cut surfaces. The airway is free of blood, abnormal secretions or foreign objects.

**LUNGS:** The right and left lungs weigh 1100 gm, combined. The pleural surfaces are smooth and glistening with moderate reticular anthracosis. The bronchi and their major branches contain frothy secretions. The vasculature is unremarkable and free of thromboemboli. Cut sections reveal purple, anthracotic parenchyma which exudes serosanguineous fluid. There is no evidence of consolidation, infarction or neoplasia.

**LYMPH NODES:** Unremarkable.

**LIVER:** 1470 gm with a smooth and intact capsule. The parenchyma is brown with a normal appearance and no lesions.

**GALLBLADDER:** Not present.

**SPLEEN:** 210 gm with an intact capsule and unremarkable red cut surfaces.

FOR PROFESSIONAL USE ONLY
NOT TO BE DUPLICATED

**PANCREAS:** Has the usual external configuration and unremarkable tan lobular cut surfaces.

**ADRENAL GLANDS:** Unremarkable yellow cerebriform cortices.

**G.I. TRACT:** The tongue is without recent injury. The pharynx and esophagus are unremarkable. The stomach contains approximately 15 cc of green fluid with no food or pill fragments identified. The gastric mucosal surface is arranged in the usual rugal folds. The serosal surfaces of the small and large intestines are unremarkable. The appendix is present and unremarkable.

**KIDNEYS:** The right and left kidneys weighs 250 gm, combined. The capsules strip with ease to reveal smooth, brown cortical surfaces. On sectioning, the cortices are of normal thickness with distinct, congested corticomedullary junctions. The pyramids and collecting systems are unremarkable with no signs of dilation or stones.

**BLADDER:** Contains urine with an unremarkable tan mucosal surface.

**GENITALIA:** The uterus is not present and the Fallopian tubes are not identified. The ovaries are atrophic.

**BRAIN:** 1370 gm. No evidence of epidural, subdural, or subarachnoid hemorrhage. The brain is symmetrical with full gyri and no evidence of herniation, contusion, neoplasia, or infection. The vessels at the base of the brain follow their usual anatomic courses and are patent. Cut surfaces are free of hemorrhage, necrosis or neoplasm. The ventricles are of appropriate caliber.

**MUSCULOSKELETAL:** The bones are well formed with no evidence of fracture or deformity. Skeletal muscle is red-brown and moist with a mass appropriate for the age and sex of the decedent.

---

OTHER LAB PROCEDURES: PHOTO _x_ MICRO __ TOX _x_ X-RAY __ FINGERPRINTS _x_ DENTAL __ DNA _x_ GSR __ PERK __
HIV __ HEPATITIS __ BACTERIOLOGY __ VIROLOGY __ ACCELERANTS __ OTHER __
**DISPOSITION OF EVIDENCE:**
TOXICOLOGY: Iliac blood (red border x 2), vitreous
OCME: Iliac blood (EDTA, tiger top, cup), liver, gastric contents, urine, DNA card, fingerprints x 2
FUNERAL HOME: Clothing and personal effects
INVESTIGATOR: None

Autopsy # N194-14

**MICROSCOPIC DESCRIPTION:** None submitted.

**TOXICOLOGY:**   See Certificate of Analysis.

**CASE SUMMARY:**

According to investigators, this was a 49-year-old Caucasian female with a past history of drug abuse who was found unresponsive at home with drug paraphernalia. Gross examination showed 3 needle punctures not associated with medical intervention.

Postmortem toxicological analysis of iliac blood was positive for a lethal level of morphine. 6-Acetylmorphine was detected in the vitreous humor indicative of heroin. Also present and contributing to death was cocaine.

**CAUSE OF DEATH:**

　　Acute combined heroin and cocaine poisoning

FOR PROFESSIONAL USE ONLY
(illegible stamp)

**MANNER OF DEATH:**

　　Accident

**PATHOLOGIST:** Jocelyn Posthumus, M.D.　　　**DECEDENT:** Rita Faye Livermore

Warren Evans Jr #58902-037
Federal Correctional Complex - USP 1
PO Box 1033
Coleman, Florida 33521



RETURN RECEIPT REQUESTED

CERTIFIED MAIL
7015 1660 0000 2829 1279

Clerk
U.S. Court
For the
1100 East
Richmond

Legal mail





SENDER: COMPLETE THIS SECTION
- Complete items 1, 2, and 3.
- Print your name and address on the r so that we can return the card to you
- Attach this card to the back of the m or on the front if space permits.

1. Article Addressed to: Clerk Of
U.S. Court of Appeal
For the Fourth Circu
1100 E. Main street
Richmond, VA 2321

9590 9403 0683 5196 080

2. Article Number (Transfer from service labe
7015 1660 0000 2

PS Form 3811, April 2015 PSN 7530-02

THE ENCLOSED LETTER WAS PROCESSED THROUGH SPECIAL MAILING. THE LETTER HAS BEEN NEITHER OPENED OR INSPECTED. IF THE WRITER RAISES A QUESTION OR A PROBLEM OVER WHICH THIS FACILITY HAS JURISDICTION, YOU MAY WISH TO RETURN THE MAIL FOR FURTHER INFORMATION OR CLARIFICATION. IF THE WRITER ENCLOSED CORRESPONDENCE FOR FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESSEE.

DATE _____
MAIL ROOM STAFF _____



| COMPLETE THIS SECTION ON DELIVERY | | |
|---|---|---|
| A. Signature<br>X | | ☐ Agent<br>☐ Addressee |
| B. Received by (Printed Name) | | C. Date of Delivery |
| D. Is delivery address different from item 1?  ☐ Yes<br>   If YES, enter delivery address below:    ☐ No | | |

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Mail
- ☐ Mail Restricted Delivery
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

29 1279

-000-9053

**F.C.C. COLEMAN**
**MAIL ROOM**
**846 N.E. 54TH TERR**
**COLEMAN, FLORIDA**



RECEIVED MAR 15 2019