IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 5:15-cr-00020 |
| | ) |
| v. | ) |
| | ) |
| | ) |
| WARREN EVANS, JR., | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Petitioner | ) |

## MEMORANDUM OPINION

Warren Evans, Jr., a federal inmate currently serving a 372-month sentence for distributing drugs, including distribution of heroin that resulted in serious bodily injury, has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 82. On March 13, 2021, the United States file a response and moved to dismiss Evans' petition, ECF No. 89, to which Evans did not reply. For the reasons set forth below, the court **GRANTS** the government's motion to dismiss and **DISMISSES** Evans' motion for § 2255 relief.

I.

On July 21, 2015, Evans was indicted on one count of conspiring to distribute and possess with intent to distribute 1,000 grams or more of heroin, 280 grams or more of cocaine base (crack), and a detectable amount of cocaine powder, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C) (Count 1). He also was indicted on one count of conspiracy to distribute heroin, the use of which resulted in the serious bodily injury and death of R.F.L., in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count 2). Indictment, ECF No. 18. Count 1

carried a statutory sentence of 10 years to life and Count 2 carried a statutory sentence of 20 years to life.

On January 27, 2016, Evans entered into Rule 11(c)(1)(C) plea agreement in which he pled guilty to both counts in exchange for a sentence of between 282 months and 372 months. In the plea agreement he acknowledged that if he were convicted on Count 2, or if he were convicted on Count 1 of a 1,000-gram heroin or 280-gram crack conspiracy, and the government pursued a notice against him under 21 U.S.C. § 851 based on his prior qualifying drug convictions, that he would be subject to a mandatory minimum term of imprisonment for life. Plea Agreement, ECF No. 38 at 1-2. He also stipulated that under United States Sentencing Guidelines 2D1.1(a)(2) and 2D1.1(b)(1) his base offense level would be 38 based on the death and serious bodily injury charge, increased by two points because he had a firearm. Id. at 4. He acknowledged that he would potentially be subject to a base offense level of 43 pursuant to U.S.S.G. § 2D1.1(a)(1) based on his prior drug convictions and that he could be treated as a "career offender" under the guidelines if the court determined that he had at least two prior convictions for felony drug convictions or crimes of violence. Id.

Evans also agreed to waive his right to appeal, except for those matters that could not be waived by law. He further agreed to waive his right to collaterally attack his sentence, except for an issue that could not be waived by law or a collateral attack based on ineffective assistance of counsel. Id. at 7-8. Evans entered his guilty plea the same day. ECF No. 41. On June 15, 2016, Evans was sentenced to 372 months on each count, to run concurrently, and a 5-year term of supervised release. J., ECF No. 53.

Proceeding pro se, on February 21, 2019, Evans filed a motion requesting leave to file a belated direct appeal, arguing that he asked his attorney to file a notice of appeal on his behalf and that the attorney neglected to do so. ECF No. 64. On March 21, 2019, Evans filed a notice of appeal with the Fourth Circuit Court of Appeals, which forwarded it to the district court in accordance with Rule 4(d) of the Federal Rules of Appellate Procedure. ECF No. 66.

On April 4, 2019, the court advised Evans that it was denying his motion to file a belated direct appeal but would treat his previously filed notice of appeal as a § 2255 motion. ECF No. 70. The court mailed him a § 2255 form to complete if he wished to proceed with the motion. In the meantime, the Fourth Circuit Court of Appeals appointed counsel to represent Evans on the notice of appeal he had filed. ECF No. 69.

On April 18, 2019, Evans notified that court that he had been appointed counsel by the Fourth Circuit and wished to pursue his appeal in that court rather than proceed via § 2255 in the district court. ECF No. 72. On April 23, 2019, the district court dismissed his § 2255 petition without prejudice. ECF No. 73. On September 27, 2019, the Fourth Circuit dismissed Evans' appeal as untimely filed. ECF No. 74. Evans sought a writ of certiorari which the Supreme Court denied on January 27, 2020. ECF No. 78.

Evans filed the current § 2255 motion on January 12, 2021. He argues that under Burrage v. United States, 571 U.S. 204 (2014), he should not have been held liable for the death of R.F.L. because her death was not caused solely by the heroin that Evans sold her. Evans also claims that his attorney was ineffective for failing to make an argument based on Burrage prior to his pleading guilty. He further claims that his attorney manipulated and threatened him into pleading by telling him going to trial would result in a life sentence. Finally,

Evans asserts that his attorney did not provide him with a copy of the autopsy report until June 2018, which is why he filed his appeal after the limitations period had passed.

In response, the government argues that Evans' motion should be dismissed as untimely and also that he waived his right to collaterally attack his sentence. The government further argues that <u>Burrage</u> does not offer Evans the relief he seeks, and that his attorney was not ineffective for failing to argue that <u>Burrage</u> applied to his case or in advising Evans to plead guilty.

## II.

### A. 28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. <u>White v. United States</u>, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing <u>Miller v. United States</u>, 261 F.2d 546 (4th Cir. 1958), and <u>Vanater v. Boles</u>, 377 F.2d 898, 900 (4th Cir. 1967)).

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both

that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008). (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. When a petitioner argues that he received ineffective assistance of counsel as part of a plea agreement, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### 1. Timeliness of Petition

Petitioners seeking relief under 18 U.S.C. § 2255 must file within the one-year statute of limitations set out in the statute. The period begins to run from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such

5

governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

In Evans' case, judgment was entered on June 15, 2016 and his time for filing an appeal expired fourteen days later, making his conviction final on June 29, 2016. Fed. R. App. P. 4(b); Clay v. United States, 537 U.S. 522, 524-525 (2003). He had one year from that date, or until June 29, 2017, to file his motion under 28 U.S.C. § 2255. Because he did not file it until January 12, 2021, it was filed more than three years too late. Absent equitable tolling, Evans' motion is time-barred.

Equitable tolling applies only when a movant can show that he has been pursuing his rights diligently and some extraordinary circumstance prevented him from timely filing his motion. Holland v. Florida, 560 U.S. 631, 649 (2010). Whether equitable tolling applies depends on the facts and circumstances of each case. Harris v. Hutchinson, 209 F.3d 325, 329-330 (4th Cir. 2000). Evans asserts that he did not learn that the autopsy report stated that R.F.L. died of "acute combined heroin and cocaine poisoning" until his attorney sent him the report in June 2018. Pet'r's Mot., ECF No. 82 and 11; Letter from attorney dated June 17, 2018, ECF No. 82-1. Assuming this is true, Evans waited approximately two-and-a-half additional years before filing his habeas application on January 12, 2021. Such a delay is inconsistent with a finding that Evans was diligently pursuing his rights. Accordingly, the court finds that Evans is not entitled to equitable tolling of the statute of limitations and his motion

6

for relief under § 2255 is **DISMISSED** as untimely filed.[1] In the alternative, Evans' motion is addressed on the merits.

### 2. Waiver of Collateral Attack

Respondent correctly points out that as part of the plea agreement, Evans waived the right to collaterally attack his conviction or sentence, unless the attack was based on ineffective assistance of counsel or an issue that otherwise cannot be waived by law. Plea Agreement, ECF No. 38 at 8. Thus, Evans cannot argue that he is not guilty for causing serious bodily injury or the death of R.F.L. based on Burrage in this § 2255 motion. However, Evans argues that his attorney was ineffective for failing to assert that he could not be convicted under Burrage and he also argues that he was manipulated and threatened into pleading guilty. Although these arguments are time-barred, the court will address them because they were not included in the collateral review waiver. See United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005) (finding "a waiver of right to appeal may not be knowing and voluntary if tainted by the advice of constitutionally ineffective trial counsel.")

### 3. Effect of Burrage on Evans' Case

In the Burrage case, Joshua Banka died after overdosing on drugs, including heroin he bought from defendant Burrage. The evidence showed that Banka started a drug binge by smoking marijuana and later in the day crushed, cooked, and injected oxycodone. That

---

[1] The court recognizes that Evans attempted to file a late appeal in March 2019, within one year of his receiving a copy of the autopsy report and the court construed it as a § 2255 motion. ECF No. 70. However, once the Fourth Circuit appointed counsel to represent Evans, he advised this court that he did not want to pursue a § 2255 motion at that time. ECF No. 72. It is possible that Evans was confused by the fact that the Fourth Circuit appointed counsel to represent him and may have believed that the Fourth Circuit was going to consider his appeal on the merits, thus prompting him to not proceed with the first § 2255 motion. Nevertheless, as explained further in this Memorandum Opinion, even if Evans' § 2255 motion could be considered timely filed under 28 U.S.C. § 2255(f)(4), he is not entitled to relief on the merits.

evening, he bought one gram of heroin from Burrage and immediately cooked and injected it. Later that evening he injected more heroin. The next morning, he was found dead in his home. A search of his house and car turned up syringes, 0.59 grams of heroin, alprazolam and clonazepam tablets, oxycodone pills, a bottle of hydrocodone, and other drugs. Burrage, 571 U.S. at 206.

Burrage pleaded not guilty to distributing heroin and to the charge that he had unlawfully distributed heroin and that "death . . . resulted from the use of th[at] substance," under § 841(b)(1)(C). At trial, a medical expert testified that multiple drugs were present in Banka's system at the time of his death, including heroin metabolites, codeine, alprazolam, clonazepam metabolites, and oxycodone. Id. at 207. Although morphine, a heroin metabolite, was the only drug present above the therapeutic range, the doctor could not say whether Banka would have lived had he not taken the heroin. He did conclude, however, that heroin was a contributing factor in Banka's death because it interacted with the other drugs to cause respiratory or central nervous system depression. Id. The state medical examiner reached a similar conclusion, describing the cause of death as "mixed drug intoxication" with heroin, oxycodone, alprazolam, and clonazepam all contributing to Banka's death. The medical examiner could not say whether Banka would have lived had he not taken the heroin but testified that his death would have been "very less likely." Id.

Burrage was convicted and the Eight Circuit Court of Appeals affirmed. The Supreme Court granted certiorari on two questions: whether a defendant may be convicted under the "death results" provision of § 841(b)(1)(C) when (1) the use of the substance is a "contributing cause" of the death and (2) without instructing the jury that it must decide whether the victim's

8

death by overdose was a foreseeable result of the defendant's drug-trafficking offense. Id. at 208. The Court vacated the guilty verdict and remanded the case, holding that

> at least where the use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.

Id. at 218-19.

Evans contends that his attorney should have argued to the court that in accordance with Burrage, he could not be convicted under § 814(b)(1)(C) based on the autopsy report on R.F.L.'s death. However, Evans' case differs from Burrage's case in an important respect. Although R.F.L.'s cause of death is listed as "[a]cute combined heroin and cocaine poisoning," the "[p]ostmortem toxicological analysis of iliac blood was positive for a lethal level of morphine. 6-Acetylmorphine[2] was detected in the vitreous humor indicative of heroin. Also present and contributing to death was cocaine." Autopsy Report, ECF No. 82-1 at 1. While Evans is correct that R.F.L.'s cause of death was listed as "combined heroin and cocaine poisoning," the pathologist found that the toxicological analysis of her iliac blood was positive for a "lethal level of morphine."

Additionally, in the Redacted Statement of Facts that Evans signed as part of his plea agreement, it is stated that,

> The Medical Examiner explained that the 0.23mg/L level of morphine is considered a lethal level, and the 6-Acetylmorphine present in the Vitreous Humor shows that this was an acute reaction, with R.F.L.'s injection with heroin occurring around the time of death. The Medical Examiner added that in her

---

[2] "6-acetylmorphine (6-AM) is an intermediate metabolite between heroin and morphine. Generally, 6-AM is present for a short time after use of heroin." https://www.labcorp.com/content/q-what-6-acetylmorphine (last viewed Nov. 23, 2021).

9

> opinion, the level of morphine would surely be enough to cause at least seriously bodily injury to a person.
>
> The assigned forensic toxicologist who certified the results of the toxicology has similarly explained that the 0.23mg/L level of morphine is consistent with a lethal dose of heroin, and that this is at the high end of levels of morphine that her office has been seeing in lethal overdoses. She stated that the office regularly sees levels of cocaine in drivers that matched the level found in R.F.L.'s toxicology, and that those levels were consistent with R.F.L.'s having used cocaine in an earlier part of the day rather than close in time to her death - which was consistent with witness statements. She added that, in her opinion, without the morphine found in the submission, R.F.L. would have had, at the least, a much better chance of being alive.

Redacted Statement of Facts, ECF No. 39 at 5. Thus, the evidence in Evans' case shows that the heroin was an independently sufficient cause of R.F.L.'s death and Burrage does not support a finding that Evans was not guilty under § 841(b)(1)(C).

In addition, according to a letter that Evans' attorney wrote to him, the attorney was aware of Burrage and examined the evidence in Evans' case in light of the Court's holding in Burrage. Because the autopsy report stated that the amount of heroin was a lethal dose, Evans' counsel did not pursue that defense. Letter of Aug. 13, 2017; ECF No. 82-1 at 2. Accordingly, the court finds that Burrage did not offer Evans a chance at acquittal on the § 841(b)(1)(C) charge and Evans' attorney was not ineffective for failing to pursue that argument on his behalf.

### 4. Voluntariness of Plea

Evans pled guilty in accordance with the Plea Agreement and now claims that his plea was involuntary because his attorney did not give him accurate information about the sentence he would face if he were found guilty and sentenced without a plea agreement and also that he did not know about the contents of the autopsy report. However, at the plea hearing, Evans

testified under oath that he wanted to proceed with the plea agreement. Sentencing Tr., ECF No. 58 at 4. He further testified that he understood that if the court accepted the plea agreement, he would be sentenced to between 282 and 372 months in prison. Id. "A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)) (internal punctuation omitted). Absent extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established. United States v. Rambert-Hairston, 824 F. App'x 179, 180 (4th Cir. 2020) (per curiam).

Extraordinary circumstances do not exist in this case. Evans argues that his attorney manipulated him and threatened that if he did not plead guilty, he would be sentenced to life in prison. He cites the letter his attorney wrote to him where he stated that his biggest concern was Evans' criminal record, because Evans had at least three prior criminal felony drug convictions that opened him up to a mandatory life sentence. Letter of Aug. 13, 2017; ECF No. 82-1 at 2. A review of the record shows that Evans' attorney accurately described his criminal history and that the government could have filed a notice that it intended to seek an enhancement of his sentence under 21 U.S.C. § 851, which would have resulted in a mandatory life sentence. But, as part of the plea agreement, the government agreed not to do so. Plea Agreement, ECF No. 38 at 1-3; PSR, ECF No. 55, ¶ 74. At the sentencing hearing, the court commented the following:

> [I]t's not lost on anyone in this room, but for the government [not] filing 851s in this case, this gentleman's sentence would be mandatory life. I mean, that's

11

>just the way it is because he's got so many prior drug convictions. And the benefit of this plea agreement from Mr. Evans' perspective is he's not being faced with mandatory life. I mean, the sentence here is big. Everybody knows that. It's, you know, 282 to 372, but it's not mandatory life. And that's the benefit of this plea agreement for Mr. Evans.

Sentencing Tr., ECF No. 58 at 12-13.

Evans acknowledged that he understood the impact of the plea agreement. Id. at 13. The record does not support a finding that Evans pled guilty because his attorney manipulated or threatened him. Rather, it shows that Evans' attorney accurately described the potential life sentence he faced if he proceeded to trial and was found guilty.

Evans also claims that he did not know at the time he pled guilty that the autopsy report stated that R.F.L.'s death was caused by acute combined heroin and cocaine poisoning and that had he known, he would not have pled guilty. However, in the Redacted Statement of Facts, initialed on each page and signed by Evans, it is stated that the "Medical Examiner determined R.F.L.'s cause of death as 'Acute combined heroin and cocaine poisoning.'" Statement of Facts, ECF No. 39 at 4. The report further explained that the "[p]ostmortem toxicological analysis of iliac blood was positive for a lethal level of morphine." Id. Also, in the letter from Evans' attorney, he stated, "I will get the autopsy reports to you. You may not recall, but we went over the autopsy reports and on each of the fatalities and those that almost died. Each of the reports did state that the amount of heroin in the person was a lethal dose." Letter of Aug. 13, 2017, ECF No. 82-1 at 2. Thus, although Evans may not have seen a copy of the autopsy report prior to pleading guilty, the record shows that he was made aware of the contents of the report and of the fact that the report showed that R.F.L. had a lethal amount of morphine in her system at the time she died.

The record shows that Evans' attorney accurately explained Evans' sentencing exposure and also discussed the evidence, including the autopsy report, with Evans prior to his entering the plea agreement. Evans has failed to demonstrate that his attorney provided ineffective assistance of counsel in his assessment and explanation of the evidence, when he negotiated the plea agreement, or when he explained the plea agreement to Evans.

### III.

For the reasons stated, the court **GRANTS** the government's motion to dismiss, ECF No. 89, and **DENIES** Evans' motion under 28 U.S.C. § 2255, ECF No. 82. Because Evans has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

An appropriate Order will be entered.

Entered: 12/6/2021

Michael F. Urbanski
Chief United States District Judge